**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elina Seliverstova, | No. CV-20-01235-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security's ("Commissioner") denial of Plaintiff Elina Seliverstova's ("Plaintiff") application for disability insurance benefits. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. For the following reasons, the Court affirms the Administrative Law Judge's ("ALJ") decision (Doc. 16-17 at 11–29), as upheld by the Appeals Council, *id.* at 2–5.

**BACKGROUND**

Plaintiff is a former caregiver and hair stylist. Plaintiff alleges disability beginning on December 21, 2012 ("onset date"). (Doc. 17 at 3.) Her claim was denied initially on June 26, 2013, and upon reconsideration on December 5, 2013. (Doc. 16-3 at 15.) On September 9, 2015 the ALJ denied Plaintiff's Application, and on January 27, 2017, the Appeals Council denied Plaintiff's Request for Review. *Id.* at 2.

On April 23, 2019, pursuant to a remand from the United States District Court for the District of Arizona, the ALJ held another hearing. On July 1, 2019, the ALJ denied

Plaintiff's Application, and on August 6, 2019 the Appeals Council denied Plaintiff's Request for Review. (Doc. 16-17 at 8.) The ALJ evaluated Plaintiff's disability based on the following severe impairments: obesity, fibromyalgia, lumbar and cervical degenerative disc disease with spondylosis and radiculopathy, mild lower extremity neuropathy, hypothyroidism, hypertension, iron deficiency anemia, and asthma. *Id.* at 17. Ultimately, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 20. Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following exceptions: occasionally climb stairs; never climb ladders, ropes, or scaffolding; frequently balance; occasionally stoop, kneel crouch, and crawl; avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; no exposure to hazards, such as moving machinery and unprotected heights.

*Id.* at 21. Accordingly, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 28.

## DISCUSSION

### I. Legal Standards

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe," medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

**II.   Analysis**

Plaintiff argues that the ALJ erred by (1) discounting the opinions of several treating physicians; (2) rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for doing so; and (3) determining Plaintiff's residual functional capacity without basis in the record and or consideration for the individualized facts of her case. The Court will address each of Plaintiff's arguments in turn.

**A. Consideration of Medical Opinion Evidence.**

In formulating the RFC, the ALJ evaluates all medical opinions in the record and assigns a weight to each. 20 C.F.R. §§ 404.1527(b), 404.1527(c). An ALJ must resolve any conflicts between medical opinions. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

601 (9th Cir. 1999). The weight the ALJ gives an opinion depends on a variety of factors, namely: whether the physician examined the claimant; the length, nature, and extent of the treatment relationship (if any); the degree of support the opinion has, particularly from medical signs and laboratory findings; the consistency of the opinion with the record as a whole; the physician's specialization; and "other factors." 20 C.F.R. §§ 404.1527(c)(1)–404.1527(c)(6). The ALJ may assign lesser weight to a controverted opinion of a treating physician, as is the case here, if the ALJ articulates "specific and legitimate reasons supported by substantial evidence." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

### a.  Dr. Emil Slovak

In 2014, treating physician Dr. Slovak completed a form concluding that Plaintiff's back pain resulted in an inability to sit for more than three hours or walk for more than one hour in an eight-hour day. (Doc. 16-11 at 62.) The ALJ afforded Dr. Slovak's opinions minimal evidentiary weight because they were in the form of a checklist and were contradicted by Dr. Slovak's other statements and assessments of Plaintiff's medical condition. (Doc. 16-17 at 25–26.) Specifically, although Dr. Slovak ultimately concluded that Plaintiff's pain was severe enough to limit her from performing fulltime work activity, his notes consistently indicated normal gait, muscle tone, and strength and no difficulty using hands or feet. *Id.* Because the ALJ's opinion included a thorough explanation of Dr. Slovak's clinical conclusions, and the ALJ's interpretation of those conclusions and the conflicting clinical evidence, there was substantial evidence to support the ALJ's discount of Dr. Slovak's opinion.

The ALJ did not err by selectively assessing the evidence. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This is the case here. Although Plaintiff is correct that there is evidence in the record of Plaintiff's fatigue

and need to lie down frequently, the Court cannot say that it was unreasonable for the ALJ to conclude that the treatment notes also showed otherwise. *See, e.g.*, (Doc. 16-11 at 92) (noting that Plaintiff's "back pain okay on meds now" and that Plaintiff "diets and walking some."); (Doc. 16-17 at 25–26) (noting that Dr. Slovak's treatment notes are "more routine" and often reflect refills of medications such as Xanax, not treatment for chronic pain.). The ALJ thus properly weighed and discounted Dr. Slovak's opinion.

### b. Dr. Philip Ku

In 2019, treating physician Dr. Ku opined that Plaintiff remained capable of carrying less than 10 pounds, and standing or walking for less than two hours. The ALJ "was unable to afford more weight to this opinion" because Dr. Ku did not elaborate on these limitations in greater detail and accompanied the opinion with a note that Plaintiff's pain management provider would be better at evaluating her disability. (Doc. 16-17 at 26.) The ALJ further explained that Dr. Ku did not record physical examinations which support the finding of significant limitations or treat the source of these limitations. Instead, Dr. Ku provided more routine treatment and referrals. *Id.* Plaintiff asserts that the ALJ "failed to explain how more explanation would clarify an already clear assessment" and "focused on an obscure conclusion that Dr. Ku must have no confidence in his medical opinion." (Doc. 17 at 17.) It is not "cherry-picking," however, to discount a medical source's opinion on the basis that it indicates a lack of confidence in its own findings. *See, e.g.*, *Wilson v. Colvin*, No. 1:15-CV-03173-JTR, 2016 WL 8252569, at *4 (E.D. Wash. Oct. 26, 2016) (finding statement "I recommend an independent medical exam to determine ability to function. I do not do this sort of exam," expressed a lack of confidence in functional analysis and was a legitimate and specific reason to reject the opinion.) The ALJ thus properly weighed and discounted Dr. Ku's opinion.

### c. Dr. Ramin Sabahi

In 2015, treating physician Dr. Sabahi advised that the Plaintiff "avoid lifting, pushing and pulling" because of her lumbar spondylitis. (Doc. 16-16 at 13.) The ALJ afforded Dr. Sabahi's opinion partial weight because, given its vague description of the

Plaintiff's limitations and the ALJ's finding that avoiding pushing, pulling and lifting is inherent in sedentary work, it supported the limitation but did not require finding the Plaintiff was unable to work in any capacity. Plaintiff's emphasis on Dr. Sabahi's diagnoses does not contradict the ALJ's reasoning. The charted limitations were consistent with sedentary work and do not demand a finding that further restrictions are necessary or that the ALJ's reasoning is unsupported by substantial evidence. *See e.g., Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings."). The ALJ thus properly weighed Dr. Sabahi's opinion.

### d.  Dr. Payam Zamani & Dr. Levine

Finally, although Plaintiff alleges that "[t]he ALJ overlooked the effects of claimant's thyroid condition in the RFC assessment," (Doc. 17 at 19), the ALJ clearly addressed Plaintiff's other medical conditions when assessing Plaintiff's RFC. The ALJ explained: "[T]he treatment record reflects monitoring and occasional conservative intervention for iron-deficiency, anemia, hypothyroidism, and hypertension (Exs. 11F, 44F, 46F, 48F). Hypothyroidism was generally considered clinically stable (Ex. 48F at 10-11)." (Doc. 16-17 at 23); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ thus acknowledged and considered Plaintiff's other conditions and did not err by concluding that they were controlled by current treatment.

### B.  Plaintiff's Symptom and Work-Related Capacity Testimony

Because the severity of an impairment may be greater than what can be shown by objective medical evidence alone, the ALJ considers a claimant's subjective testimony regarding pain and symptoms. 20 C.F.R. § 404.1529(c)(3); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The claimant, however, must still show objective medical evidence of an underlying impairment that could reasonably be expected to produce the

pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a). However, while such evidence is required to show the existence of an underlying impairment, "the [ALJ] may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). Nevertheless, the ALJ evaluates the testimony in relation to the objective medical evidence and other evidence in determining the extent to which the pain or symptoms affect her capacity to perform basic work activities. 20 C.F.R. § 404.1529(c)(4).

Unless there is evidence of malingering by the claimant, the ALJ may only reject symptom testimony for reasons that are specific, clear, and convincing. *Burch*, 400 F.3d at 680. In evaluating the credibility of a claimant's testimony, the ALJ may consider the claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997); *see* 20 C.F.R. § 404.1529(c)(4).

The Ninth Circuit has made clear that if "the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). But an ALJ may rely on contradictory medical evidence to discredit symptom testimony, so long as he "make[s] specific findings justifying his decision." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). In doing so, the ALJ need not engage in "extensive" analysis but should, at the very least "provide some reasoning in order [for a reviewing court] to meaningfully determine whether [the ALJ's] conclusions were supported by substantial evidence." *Id.* at 495.

The ALJ considered Plaintiff's testimony that "her conditions affect her ability to

sit, stand, walk, lift, and carry" and "despite pain medication she experiences constant, radiating back pain and neck pain that persists even when sitting and breathing." (Doc. 16-17 at 21.) The ALJ considered that Plaintiff reported difficulty moving her head and going to the bathroom, and increased fatigue with daily activities. Plaintiff estimated that she can sit for two hours at a time if she can move around, and that she could walk approximately 50 feet and carry approximately five pounds. *Id.* She denied the ability to stand for more than five minutes and estimated that she lies down approximately four times in a typical day. *Id.* Although the ALJ found that "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ states that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 23. The ALJ found:

> The evidence, however, does not suggest [Plaintiff's] activities have been extremely curtailed. While it demonstrates a history of pain management for objectively documented degenerative back and neck conditions, it does not reflect difficulties or abnormalities at the level she described. MRI studies have been stable without interval change since 2015 (Ex. 45F at 4-5, 7, 14-15, 16-17). Her pain management specialists have attempted various forms of treatment, including ongoing prescription pain medication and occasional injections, and the claimant often reported generally stable condition and adequate pain relief at her appointments (Ex. 6F at 23, 26, 47; Ex. 9F at 19, 45, 55, 65; Ex. 41F at 5, 9, 36, 39-40, 41; Ex. 43F at 20, 55).

*Id.* at 23-24. The ALJ noted that Plaintiff had indicated to providers multiple times that her pain was adequately controlled, *see* (Doc. 16-8 at 72) (explaining she used her pain medication sparingly); (Doc. 16-25 at 2) (explaining her pain was mild and did not interfere with activities of daily life), and several physical consultations revealed no significant abnormalities. *See, e.g.*, (Doc. 16-8 at 96, 113–114); (Doc. 16-10 at 161–62); (Doc. 16-11 at 2).

Because the ALJ found Plaintiff's testimony concerning the severity of her conditions incredible for several specific reasons, the ALJ was free to discount Plaintiff's subjective statements, even though some of Plaintiff's statements may have been supported by other evidence in the record. *See Thomas*, 278 F.3d at 960; *see also Andrews v. Shalala*,

53 F.3d 1035, 1039–40 (9th Cir.1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. [A court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."). The record does not demonstrate that the ALJ failed to consider a pattern of waxing and waning symptoms; nor does it render the ALJ's finding unreasonable in light of Plaintiff's testimony about the side effects of her pain medication. The ALJ included a detailed discussion of Plaintiff's testimony about her symptoms and found that they reflect an ability to continue to work with medication. The Court finds that the ALJ did not pick isolated instances of improvement, and did not err in finding that Plaintiff's records, overall, are inconsistent with her testimony.

### C. Basis for RFC Determination

An ALJ must assess RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545. If "an ALJ finds that a claimant can no longer do the kind of work she has done in the past, the ALJ will consider the claimant's residual functional capacity together with her vocational factors of age, education, and work experience to determine whether the claimant can work." *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001) (citing 20 C.F.R. § 404.1560(c)).

Plaintiff asserts that the ALJ erred by relying on a narrow interpretation of the record and ignoring substantial evidence from treating and examining physicians and claimant's testimony. (Doc. 17 at 23.) As discussed above, however, the ALJ properly discounted the Plaintiff's treating and examining physicians' testimony. The ALJ also explained how the evidence supports the RFC determination: finding that (1) despite functional limitations caused by her symptoms, Plaintiff is routinely advised to exercise by providers, and has often reported that she walked or did yoga; (2) although Plaintiff received a prescription for an assistive device, her records do not indicate regular use; (3) Plaintiff has often reported mild or controlled pain and presented with normal gait and muscle strength; and (4) Plaintiff's MRI studies have been stable without interval changes. (Doc. 16-17 at 24-25.) The RFC determination was therefore supported by the record and reasonably

reflected Plaintiff's capabilities in spite of her impairments.

## CONCLUSION

For the reasons stated above, the Court finds that the ALJ's opinion was supported by substantial evidence in the record and was free from harmful legal error.

**IT IS THEREFORE ORDERED** affirming the July 1, 2019 decision of the Administrative Law Judge, as upheld by the Appeals Council on August 6, 2019 (Doc. 16-17.)

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 18th day of February, 2021.

_____
G. Murray Snow
Chief United States District Judge